# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL CENTER OPERATING CO., *et al.*, <br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF TEXAS, <br> Defendant. | §§§§§§§§§§ | CIVIL ACTION NO. H-08-2379 |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 86] filed by Defendant Blue Cross and Blue Shield Association ("Association"), to which Plaintiffs North Cypress Medical Center Operating Company, Ltd. and North Cypress Medical Center Operating Company GP, LLC (collectively, "North Cypress") filed a Response [Doc. # 90], Association filed a Reply [Doc. # 96], and Plaintiffs filed a Sur-Reply [Doc. # 98].[1]  Having carefully reviewed the full record and applied governing legal authorities, the Court **grants** Association's Motion.

---

[1]  Also pending are Plaintiffs' Motion for Final Summary Judgment [Doc. # 79] and the Motion for Summary Judgment [Doc. # 85] filed by Defendant Blue Cross and Blue Shield of Texas.  These motions will be addressed in a separate Memorandum and Order.

## I.   BACKGROUND

North Cypress is an acute care hospital with an emergency room, surgery center, pediatrics department, and a full range of medical services. Blue Cross and Blue Shield of Texas ("Blue Cross" or "Blue Cross (Texas)") is a provider of health care benefits.

From January 4, 2007 until June 14, 2007, North Cypress was out of network for Blue Cross. Between June 15, 2007, and December 19, 2007, North Cypress was a member of Blue Cross's network as a participating provider, agreeing to the maximum amounts that would be paid for medical services rendered to Blue Cross members. During the entire period through December 19, 2007, Blue Cross honored all patient assignments to North Cypress and would pay benefits directly to the hospital for the services it provided to Blue Cross members. North Cypress identifies three types of claims at issue in this case. "Blue Cross Claims" are claims by Blue Cross (Texas) member patients. "Blue Card Claims" are claims by members of other Blue Cross plans for services provided in Texas. "ASO Claims" are claims by members of self-funded plans for which Blue Cross provides only administrative services.

Effective December 20, 2007, North Cypress withdrew from the Blue Cross network. North Cypress alleges that, at that point, Blue Cross began enforcing its

2006 "Pay-The-Member Policy/Procedure," ignoring assignments and paying the insurance benefits directly to the patient. North Cypress alleges that many of the patients failed to use the insurance benefits they received from Blue Cross to pay for the medical services provided by North Cypress, resulting in a loss to North Cypress in excess of $2 million.

North Cypress filed this lawsuit in August 2008 and, soon thereafter, Blue Cross terminated its "Pay-the-Member" policy and again paid North Cypress directly for all patients from whom North Cypress had an assignment.

In addition to suing Blue Cross, North Cypress named Association as a Defendant. Association "is the trademark corporation that administers the licensing of the 'Blue Cross' and 'Blue Shield' registered trademarks." *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 944 n.4 (5th Cir. 1995). Association also administers the Blue Card Program. The Blue Card program governs the relationship among Blue Cross and Blue Shield licensees when a member of one plan receives covered medical care from a provider in a different plan's service area. Under the Blue Card program, a "home" plan – where the patient is insured – adjudicates the claim for benefits and determines how much should be paid. The "home" plan advises the "host" plan – where the provider is located – of that amount. The "host" plan then issues payment to the provider, and the "home" plan reimburses that

payment through the Central Financing Agency (CFA). The Association is never a "home" plan or a "host" plan, and has no role in the actual processing of claims under the Blue Card program. *See* Affidavit of Kari Hedges, Exh. A to Association's Motion.

North Cypress alleges that Association engaged in a civil conspiracy, tortious interference with contracts, and violations of the Texas Insurance Code. North Cypress seeks monetary, declaratory, and injunctive relief.

After the completion of extensive discovery, Association filed its Motion seeking summary judgment on all claims against it in this lawsuit. The Motion has been fully briefed and is ripe for decision.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). Put another way, "[s]ummary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 399 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001)

(internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co.*, 530 F.3d at 399. Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.   ANALYSIS

North Cypress alleges that Association engaged in a civil conspiracy to interfere with its contracts with its patients by paying the patients directly rather than paying North Cypress pursuant to the assignments from its patients. North Cypress also alleges that Association tortiously interfered with those contracts by paying the patients directly, and that Association violated the Texas Insurance Code. Association has moved for summary judgment on all claims.

### A.   Tortious Interference with Contracts and Civil Conspiracy Claims

The essential elements of a tortious interference with contract claim are: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was the proximate cause of plaintiff's damages; and (4) actual damage or loss." *See Hong Kong Development, Inc. v. Nguyen*, 229 S.W.3d 415, 446-47 (Tex. App. – Houston [1st Dist.] 2007) (citing *Powell Indus., Inc. v. Allen*, 985

S.W.2d 455, 456 (Tex. 1998)); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App. – Austin 2000) (citing *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex. 1996)).

North Cypress's tortious interference claim is based on Blue Cross's decision to pay benefits directly to the patients rather than honor the assignments and pay the hospital. Association has presented evidence that it "did not process, adjudicate or pay any claim submitted by [North Cypress] to [Blue Cross] that was handled through the Blue Card program or otherwise." *See* Affidavit of Kari Hedges, Exh. A to Association's Motion, ¶ 6. North Cypress has not presented any evidence that contradicts Hedges's Affidavit or that otherwise raises a genuine issue of material fact regarding whether Association engaged in a "willful and intentional act of interference" by causing Blue Cross to pay North Cypress's patients directly. Instead, North Cypress relies on the "Inter-Plan Programs Manual" ("Manual"), Exh. BB to its Motion for Final Summary Judgment. The Manual relates primarily to the relationship among the various licensee-members of the Association in connection with payments under the Blue Card Program for services provided to a licensee's member by a health care provider outside the licensee's service area. The Manual does not address in any way whether Blue Cross could or should ignore assignments to providers and pay benefits to the patients directly. Absent any evidence of

Association's involvement in Blue Cross's decision to pay the patients rather than honor the assignments, Association is entitled to summary judgment on the tortious interference with contracts claim.

To establish a civil conspiracy, the plaintiff must show that the defendants agreed on a goal or course of action, and that one of them committed an unlawful, overt act in furtherance of the goal or course of action. *Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005). Additionally, since civil conspiracy is a derivative tort, the plaintiff must show that the defendants were liable for some underlying tort in order to prevail on this cause of action. *See Trammell Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 635 (Tex. 1997). North Cypress has not presented evidence that Association and Blue Cross entered into any agreement for Blue Cross to pay North Cypress's patients directly in 2007. As a result, Association is entitled to summary judgment on the civil conspiracy claim.

### B. Texas Insurance Code Claims

North Cypress alleges that Association violated chapter 541 of the Texas Insurance Code, which grants a cause of action to any person, including a hospital, injured by another's deceptive acts or practices in the business of insurance. *See* TEX. INS. CODE § 541.151. North Cypress alleges that "Defendants made payments directly to their insureds for payment of claims that had been presented pursuant to Blue Cross

policies of health insurance." *See* Third Amended Complaint [Doc. # 59], ¶ 45. North Cypress alleges that this violated § 541.061 of the Texas Insurance Code because "Defendants failed to advise their insureds" that § 1204.054 of the Texas Insurance Code requires payment to the health care provider if there is a valid assignment from the patient to the provider.

Section 1204.054 requires an insurer to honor a valid assignment from the patient to the provider and to make payment directly to the provider. For purposes of § 1204.054, an "insurer" is defined as "an insurance company, association, or organization authorized to engage in business" in Texas. *See* TEX. INS. CODE § 1204.051(6). There is no evidence that Association is authorized to engage in business in Texas. Indeed, Association has presented evidence that it "is not authorized or licensed to sell insurance products in Texas." *See* Hedges Aff., ¶ 2.

Section 541.003 of the Texas Insurance Code provides that a "person" may not engage in Texas in an unfair or deceptive practice in the business of insurance. *See* TEX. INS. CODE § 541.003. Section 541.061 makes it an unfair or deceptive practice to fail to state a material fact that is needed to make other statements not misleading. *See* TEX. INS. CODE 541.061(2). For purposes of these provisions of the Texas Insurance Code, "person" is defined to include an association "engaged in the business of insurance." *See* TEX. INS. CODE § 541.002(2). There is no evidence that

Association is engaged in the business of insurance. The uncontroverted evidence shows that Association "is not an insurance company, does not issue insurance policies, does not have insureds, does not underwrite insurance, does not adjudicate insurance claims, and is not authorized or licensed to sell insurance products in Texas." *See* Hedges Aff., ¶ 2. Instead, Association licenses the use of Blue Cross and Blue Shield trademarks to independent companies that provide health insurance. *See id.*, ¶ 5; *Hubbard*, 42 F.3d at 944 n.4.

To support its Texas Insurance Code claims, North Cypress again relies on the Manual, Exh. BB to its Motion. There is nothing in the Manual, however, that refutes the sworn statements in the Hedges Affidavit regarding Association's lack of involvement in the insurance business.

North Cypress also relies on *Toronto v. Blue Cross & Blue Shield of Texas, Inc.*, 993 S.W.2d 648 (Tex. 1999), and *Louisiana Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529 (5th Cir. 2006). In neither case did the court hold, or even discuss, whether Association is an "insurer" or "person" for purposes of the Texas Insurance Code. North Cypress's attempt to hold Association responsible for all activities by Blue Cross in Texas is not supported legally or factually. As a result, Association is entitled to summary judgment on the Texas Insurance Code claims.

## IV.     CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** Defendant Blue Cross and Blue Shield Association's Motion for Summary Judgment [Doc. # 86] is **GRANTED**. All claims against Association are **DISMISSED** with prejudice.

SIGNED at Houston, Texas, this 13th day of **October, 2010**.

_____
Nancy F. Atlas
United States District Judge